UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| ABNER FRANCISCO DANIEL GONZALEZ CERVANTES, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | C.A. No.  1:25-CV-11608-ADB |
| ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; JOSEPH MCDONALD, JR., Sheriff Plymouth County, PATRICIA HYDE, Field Office Director, MICHAEL KROL, HIS New England Special Agent in Charge, TODD LYONS, Acting Director U.S. Immigration and Customs Enforcement, And KRISTI NOEM, U.S. Secretary of Homeland Security, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

---

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents,[1] by and through their attorney, Leah B. Foley, United States Attorney for the

---

[1] Petitioner is now detained at the South Texas ICE Processing Center in Pearsall, Texas. Therefore, Sylvester M. Ortega, the Acting Field Office Director of Enforcement and Removal Operations in San Antonio, which oversees the South Texas facilities including the Pearsall facility, should be substituted as the only named Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004): *Vasquez v. Reno,* 233 F.3d 688, 695 (1st Cir. 2000).   Antone Moniz, Superintendent of Plymouth County Correctional Facility, and Joseph McDonald, Jr., Sheriff of Plymouth County should be dismissed as Respondents, as they are not custodians of Petitioner.   Further, Patricia Hyde, Michael Kro, Tod Lyons and Kristi Noem should be dismissed as a Respondents, as the Court lacks jurisdiction over supervisory officials. *See Vasquez*, 233 F.3d at 696 (explaining that supervisory officials are not proper respondents to habeas actions, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").

District of Massachusetts, respectfully submit this opposition to the Petitioner's Petition for Writ of Habeas Corpus filed by the Petitioner pursuant to 28 U.S.C. §2241 ("Petition"). Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Rules Governing Section 2254 Cases in the United States District Courts.[2]

## **INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Petitioner fails to carry his burden to demonstrate that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution. Indeed, Petitioner does not even cite a statute, regulation, or constitutional provision that ICE has allegedly violated. As such, this Court must deny the Petition. Denial of this Petition is also appropriate as Petitioner can seek release before an immigration judge ("IJ") through a bond hearing in Immigration Court and therefore Petitioner has failed to exhaust his available remedy to obtain the relief he asks of this Court.

Finally, this Court lacks jurisdiction to review ICE's discretionary decision to initiate removal proceedings against Petitioner, 8 U.S.C. § 1252(g), as well as ICE's discretionary decisions to arrest and detain Petitioner pending his removal proceedings, 8 U.S.C. § 1226(e). As such, this Petition must be dismissed.

---

[2] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

## BACKGROUND

### A.  Petitioner's Immigration History.

The Petitioner is a native and citizen of Guatemala.   *See* Declaration of Assistant Field Office Director, Keith Chan ("Chan Decl") ¶ 7), attached as Exhibit A.   On November 14, 2018, U.S. Customs and Border Protection ("CBP") encountered the Petitioner, his mother, and his siblings as they applied for admission as a family unit at the Paso Del Norte International Bridge in El Paso, Texas via pedestrian primary from Ciudad Juarez, Mexico.  (Chan Decl. ¶ 8) At that time, the Petitioner was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality.   *Id.*

CBP detained the Petitioner without a warrant.   (Chan Decl. ¶ 9).   The Petitioner's mother expressed a fear of return to Guatemala.  *Id.*  CBP processed the Petitioner as an arriving alien. CBP served the Petitioner with a Notice to Appear, alleging he was inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).   *Id.*   The Notice to Appear was not filed with the immigration court.  (Chan Decl. ¶ 10).  On November 16, 2018, ICE released the Petitioner on an Order of Recognizance ("OREC").  (Chan Decl. ¶ 11).

On August 24, 2023, the Waltham Police Department arrested and charged the Petitioner with Assault and Battery, Assault and Battery on a Family or Household Member, and Strangulation or Suffocation.  (Chan Decl. ¶ 12).  These offenses constituted a violation of the Petitioner's OREC.  *Id.*  On May 28, 2025, ICE detained the Petitioner pursuant to its authority under 8 U.S.C. § 1225(b).  (Chan Decl. ¶ 13).   ICE served the Petitioner with a Notice to Appear for removal proceedings pursuant to 8 U.S.C. § 1229a.  *Id.*

On May 30, 2025, ICE transferred the Petitioner to the Plymouth County Correctional

Facility in Plymouth, Massachusetts.   (Chan Decl. ¶ 14).

On June 3, 2025, ICE transferred the Petitioner to the Karnes County Immigration Processing Center in Karnes County, Texas.   (Chan Decl. ¶ 15).   The Petitioner was transported by airplane on a flight, which took off from an airport in Massachusetts at 1:50 p.m.   *Id.*   ICE transferred the Petitioner to Texas in order to accommodate the need for bed space.   (Chan Decl. ¶ 16).   ICE subsequently transferred the Petitioner to the South Texas ICE Processing Center in Pearsall, Texas, where he is currently detained.   (Chan Decl. ¶ 17)

The Notice to Appear was filed with the Pearsall Immigration Court in Pearsall, Texas. (Chan Decl. ¶ 18).    The Petitioner remains in removal proceedings before the immigration court.   (Chan Decl. ¶ 19).

### B.  Petitioner's Habeas Petition and this Court's Standing Order.

Petitioner filed this Petition on June 3, 2025.   (ECF Doc. 1).   He contends that his detention is without cause and violation of his Fifth Amendment due process rights.  (ECF Doc. 1 page 4).   He also alleges that his detention is in violation of the Administrative Procedures Act and the Accardi Doctrine, as he is not in removal proceedings.   *Id.*   at page 4-5.   Petitioner asks that he be released on bail pending adjudication*.   Id.* at 5.

On June 3, 2025, at 5:35 pm, Judge Stearns issued an Emergency Order Concerning Stay of Transfer or Removal directing that "respondents will not remove the petitioner from the jurisdiction of the United States or transfer petitioner to a judicial district outside that of Massachusetts for a period of at least at least 48 hours from the time this Order is docketed." (ECF Doc. 2, page 2).

However prior to the docketing of the Emergency Order, the Petitioner had already been transported out of Massachusetts on an airplane that had taken off at 1:50 pm on June 3, 2025.

(Chan Decl. ¶ 15).

On June 4, 2025, this Court issued an Order Concerning Service of Petition and stay of Transfer or Removal, directing that the Respondents file a response to the Petition by June 15, 2025, (ECF Doc. 5 ¶ 2); and ordered that ICE not transfer Petitioner to a district outside of Massachusetts without providing advance notice of the intended move.  (ECF Doc. 5 ¶ 3).

C.    **Statutory and Regulatory Framework for Enforcement of Immigration Law.**

The Immigration and Nationality Act provides a statutory scheme for the civil detention of aliens pending a decision during removal proceedings as well as once a final order of removal has been entered.  *See generally* 8 U.S.C. §§ 1225, 1226, 1231.   The time and circumstances of entry, as well as the stage of the removal process, determines where an alien falls within this scheme and  whether detention of the alien is discretionary or mandatory.

For aliens who have entered the United States without inspection or who have been admitted but have stayed beyond the period of admission (like Petitioner), 8 U.S.C. § 1226 "generally governs the process of arresting and detaining . . . [noncitizens] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).   Section 1226(a) provides the default rule that an alien "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.*  § 1226(a).  As the Supreme Court has explained, this provision "creates authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions…."  *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (emphasis in the original).

### 1.    Discretionary Detention and Initiation of Removal Proceedings under 8 U.S.C. § 1226(a).

Pursuant to Section 1226(a), ICE has discretion to arrest an alien and then either continue detention for removal proceedings or to release the alien on "bond … or conditional parole." *Id.*

§ 1226(a)(1)-(2).  Per regulation, ICE has discretion to release "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to proper or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  If ICE opts for continued detention, the alien can seek review of that decision at a bond hearing before an Immigration Judge ("IJ").  *Id.* § 236.1(d)(1).  An IJ's decision to continue detaining an alien may be appealed to the Board of Immigration Appeals ("BIA").  8 C.F.R. § 236.1(d)(3).

ICE initiates removal proceedings with the issuance of a NTA with the Immigration Court that has jurisdiction over the location of the individual.  *See* 8 U.S.C. § 1229; 8 C.F.R. § 1003.14. Once an NTA is filed with the Immigration Court, the IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1).  Such proceeding "shall be the sole and exclusive procedure for determining whether an alien may be … removed from the United States."  *Id.* § 1229a(a)(3).  The government has "the burden of establishing by clear and convincing evidence" that an alien that was previously admitted to the United States is subject to removal from the United States.  *Id.* § 1229a(c)(3).  If the government meets this burden, the alien can apply for whatever forms of relief from removal he may be eligible.  *Id.* § 1229a(c)(4). If the IJ grants relief from removal and the government does not appeal to the BIA or is unsuccessful in such appeal, then the individual has lawful status and is not subject to removal from the United States.  If, however, the IJ orders an alien removed, such alien can appeal to the BIA and is not subject to removal until the BIA issues a decision on the appeal.  8 C.F.R. § 1241.1(a); 8 U.S.C. § 1231.  If the BIA affirms the IJ's denial of an application for relief from removal, an alien can file a petition for review ("PFR") with the circuit court and can seek a stay of removal while the PFR is pending.  8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals

in accordance with this section shall be the sole and exclusive means for judicial review of an order

of removal entered or issued under any provision of this chapter…).

### 2.  Statutory and Regulatory Background Special Immigrant Juvenile Status.

"The Immigration and Nationality Act of 1990 included a new form of immigration relief

for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018).  Specifically,

"Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned

children who, with their families, illegally entered the United States, ... and it entrusted the review

of SIJ petitions to USCIS, a component of DHS." *Osorio-Martinez v. Attorney General United

States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and citations omitted).[3]

Under the INA, to adjust status, "an immigrant visa [must be] immediately available" at

the time an application is filed and adjudicated.  8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a).  A

limited number of immigrant visas to allow adjustment of status for SIJs are available each

year.  In 2022, USCIS recognized that "[d]ue to ongoing visa number unavailability, the

protection that Congress intended to afford SIJs through adjustment of status is often delayed

for years…".  USCIS Policy Alert-2022-10,

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-

SIJAndDeferredAction.pdf.  As such, USCIS updated its policy guidance "to provide that

USCIS will consider granting deferred action on a case-by-case basis to noncitizens classified

---

[3] An individual can obtain SIJ classification when the applicant satisfies three statutory
requirements. *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 276 (D. Mass. 2023).  An individual with SIJ
status can apply for adjustment of status if they are eligible, admissible, and an immigrant visa is
immediately available. 8 U.S.C. § 1255; 8 C.F.R. § 245.1(e)(3)(i).  If an application for adjustment of
status is granted, the individual receives Lawful Permanent Resident status, i.e. a green card.  8 U.S.C. §
1255(a).  As to an application for adjustment of status, the INA automatically exempts SIJ designees from
a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility
may be waived at the Attorney General's discretion.  8 U.S.C. §§ 1255(h)(2), 1182(a).

as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visa numbers." *Id.*

USCIS made clear, however, that "[n]oncitizens without lawful status who have an approved SIJ petition remain subject to removal" because "SIJ classification does not render a noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to apply for employment authorization." *Id.* USCIS therefore considered individuals with SIJ status for deferred action which USCIS describes "an act of prosecutorial discretion that defers proceedings to remove an alien from the United States for a certain period of time." https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 (last accessed June 3, 2025). USCIS makes clear, however, that "[d]eferred action does not provide lawful status." *Id.* USCIS also "reserves the right to terminate the grant of deferred action and revoke the related employment authorization at any time as a matter of discretion." *Id.*

An individual who obtains SIJ status receives several important benefits, but is still subject to arrest, detention, and removal from the United States if a final order of removal is entered against such individual. *See United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (Explaining that while "[t]he SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status[,] … [i]n and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers.")

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28

U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948) ("The burden of proof is on the petitioner to establish denial of his constitutional rights. The court must be convinced by a preponderance of evidence.").

## ARGUMENT

### A.    Petitioner's Detention is Lawful and therefore the Petition must be Denied.

ICE's detention of Petitioner is authorized by statute, regulation, and comports with the Constitution.  As such, this Petition must be denied.

### 1.    Petitioner's Detention is Authorized by Statute and Regulation.

ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b) which allows for the detention of aliens for the purpose of removal proceedings.  (Chan Decl. ¶ 6).

Petitioner is an applicant for admission as defined by 1225(a)(1) in that he is present in the USA and has not been admitted.   As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry' into the United States." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 at 140 (2020).

ICE made the discretionary decision to arrest and detain Petitioner in May 2025 under its authority under 8 U.S.C. § 1225(b), after conducting records checks that indicated that Petitioner

had violated the conditions of his Order of Recognizance ("OREC") when he was arrested and charged with Assault and Battery on a Family or Household Member, and Strangulation or Suffocation. (Chan Decl. ¶ 12).

Detention authority stems from 8 USC 1225, specifically 8 USC 1225(b)(2)(A) as Petitioner is "not clearly and beyond a doubt entitled to be admitted" and therefore "shall be detained" for removal proceedings where he can seek asylum. As explained by the Supreme Court, 8 U.S.C. § 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). The Board of Immigration Appeals, in *Matter of Q. Li,* 29 I. & N. 66 (2025) recently held that an alien with a factually and procedurally similar background to Petitioner was detained pursuant to 8 U.S.C. § 1225(b) and not eligible for a bond hearing.

Here, Petitioner sets forth no statute, regulation, or case law that supports his claim that ICE cannot arrest and detain him for purpose of removal proceedings. He makes a general allegation that his detention is in violation of the Administrative Procedures Act and the *Accardi* doctrine, but he does not specify how ICE has acted arbitrarily or capriciously when it was acting well within its discretion to detain him during removal proceedings, in accordance with the statutes set forth above.

To the extent that Petitioner relies on his Special Immigrant Juvenile status to challenge his detention and removal, such an argument fails. Multiple courts have explained that SIJ designation does not forestall arrest, detention and removal from the United States if subject to removal. For example, the U.S. Court of Appeals for the Third Circuit considered, and answered in the affirmative, the question of whether an SIJ recipient is subject to removal on

10

account of his inadmissibility to the United States. *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 (3d Cir. 2023). In that case, the individual was charged as inadmissible from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." While this ground of inadmissibility does not prevent an SIJ designee from applying for adjustment of status, *see* 8 U.S.C. § 1255(h)(2), the court found that it does apply for purposes of *removal*. *Id.* at 433 (emphasis added). The Third Circuit reasoned that "Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis." *Id.*, n.11.

Similarly, in *Granados-Alvarado*, 350 F. Supp. 3d at 357, the district court held that "an SIJ designation does not strip the U.S. government of all removal powers." Instead, "the government retained the power to arrest, detain, and remove Granados-Alvarado in spite of his SIJ status" because of his inadmissibility to the United States. *Id.* The court explained that "§ 1255(h) does not accord Granados-Alvarado parolee status for any purposes other than for his application for adjustment of status. … It does not make his presence lawful …". *Id.* at 362. *See also*, *Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (Rejecting argument that SIJ approval grants lawful status and prevents removal from the United States and also agreeing with government's argument that being "deemed paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an underlying basis of inadmissibility or removability.").

Here, USCIS' approval of Petitioner's SIJ petition did not provide him with lawful

immigration status in the United States and does not bar ICE from arresting and detaining him for purposes of removal proceedings.

Additionally, if Petitioner seeks to claim that his detention is unlawful because USCIS previously issued him deferred action, that argument too is without merit. As USCIS makes clear, "[d]eferred action does not provide lawful status." https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 . Instead, according to USCIS, deferred action "is an act of prosecutorial discretion" in which USCIS defers initiation of removal proceedings for a certain period. *Id.* USCIS' issuance of deferred action does not limit ICE's ability to initiate removal proceedings or to arrest and detain an individual for purposes of such proceedings. For these reasons, Petitioner's detention is authorized by statute and there is no basis for this Court to order his release.

### 2.     Petitioner's Detention is Constitutional.

Petitioner's claim that his detention is "in violation of his constitutional rights to due process of law." (ECF Doc. 1, ¶ 25) is unsupported and without merit as the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."). In *Demore*, the Supreme Court upheld the constitutionality of a statute that mandated detention during removal proceedings without access to a bond hearing. *Id.* at 531. In doing so, the Court recognized that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. To ensure an alien's detention comported with the Fifth Amendment's Due Process Clause, the First Circuit in *Hernandez-Lara v. Lyons* held

that the government must bear the burden of proof at a bond hearing before an IJ.  10 F.4th 19, 39-41 (1st Cir. 2021).  But the First Circuit cast no aspersion as to the constitutionality of detention of aliens under 8 U.S.C. § 1226(a) by ICE generally and instead recognized that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up).

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings where he can seek a bond hearing and pursue relief from removal.  His detention is not indefinite, it will end upon an order of release from an IJ or upon the conclusion of his proceedings.  As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution.  *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").  As such, per Supreme Court precedent, his detention does not violate the Constitution.  *See Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid").

Petitioner is lawfully detained pursuant to statute, regulation, and the Constitution and this Court therefore lacks authority to order Petitioner's release from custody by extending the requested writ under 28 U.S.C. § 2241(c)(3).

**B.    Petitioner has Failed to Exhaust his Administrative Remedies.**

While Petitioner claims that he is not a danger to the community nor a flight risk and therefore he should not be detained, as the First Circuit has explained, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those

rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Here, Congress has established a statutory framework in which Petitioner can seek release from detention while pursuing relief from removal. Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* This remains the case "whether a court approves or disapproves of an agency's *modus operandi.*" *Id.*

Additionally, to the extent Petitioner is claiming that his detention is unwarranted because he is not a danger to the community or a flight risk, such claim must be presented to an IJ in a bond hearing, not to the district court via a Habeas Petition. This failure to exhaust also provides a basis for dismissal of this Petition. As the First Circuit has explained, "[g]enerally speaking, a plaintiff's failure to exhaust "her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). While there is no statutory mandate to exhaust a claim for release that could be made to an IJ prior to presenting such claim to the district court, common-law exhaustion "allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Id.* at 256 (cleaned up) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)). Here, Petitioner can seek release from detention though a bond hearing. He can appeal a bond decision to the BIA if necessary. As such, Petitioner has access to the relief he requests this Court order and this weighs in favor of requiring exhaustion and denying this Petition on this additional basis.

**C.     ICE has Discretion to Determine Detention Location and this Court Lacks Jurisdiction to Dictate Petitioner's Detention Location.**

Petitioner acknowledges he filed this Petition to forestall a transfer from the District of

Massachusetts to "an ICE detention facility located outside of Massachusetts" which he alleges would violate this due process right to attend his schedule court proceedings in Waltham District Court in August 2025, thus violating his right to due process in that proceeding. (ECF Doc. 1 ¶ 22). This assertion is without merit and must be rejected.

Congress provided ICE with discretion as to the detention location of individuals within its custody. Per 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See Edison C. F. v. Decker*, No. CV 20-15455 (SRC), 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) (Acknowledging that "Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings."). Here, ICE arranged for Petitioner's detention in Texas, and this placement fully comports with statute and the Constitution. *See Avramenkov v. I.N.S.,* 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (Holding that a transfer "does not constitute a violation of plaintiff's due process or statutory rights" and that ICE "is not obligated to detain aliens where their ability to obtain representation and to present witnesses is at its greatest.").

Additionally, this Court lacks jurisdiction to second-guess ICE's detention decision or to order ICE to detain Petitioner at a different facility. *See also Guangzu Zheng v. Decker*, No. 14CV4663 MHD, 2014 WL 7190993, at *15–16 (S.D.N.Y. Dec. 12, 2014), *aff'd*, 618 F. App'x 26 (2d Cir. 2015) (Court lacked jurisdiction over the location of an ICE detainee as that is a discretionary decision that is barred from judicial review); *P.M. v. Joyce,* No. 22-CV-6321 (VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) ("The Court does not have jurisdiction to review [ICE's] discretionary authority to transfer detainees."); *Mathurin v. Barr*, No. 6:19-CV-06885-FPG, 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020) ("Courts accordingly

have held that they lack jurisdiction to restrict [ICE's] decisions about whether and where to transfer aliens between facilities."); *Avramenkov,* 99 F. Supp. 2d at 214 (Explaining that "the court has no jurisdiction to review [ICE's] decision to transfer an alien from one locale to another to commence removal proceedings.").

Finally with respect to Petitioner's claim that he has a due process right to return to Massachusetts to attend his state court proceeding in Waltham, he points to no statute providing an alien subject to removal with the right to be returned to a jurisdiction to face state court criminal proceedings.   In any event, Petitioner may be able to attend the state court hearing virtually, obviating the need to physically return him to Massachusetts.

For these reasons, this Court lacks jurisdiction to dictate Petitioner's detention location.

**D.    This Court Lacks Jurisdiction to Review ICE's Arrest and Detention of Petitioner**

This Court also lacks jurisdiction to review ICE's discretionary decision to arrest and detain Petitioner.  As such, Petitioner's claim that he is entitled to bail pending adjudication is not an issue for this Court's review or consideration.

This is because Congress has made clear that ICE's "discretionary judgment regarding the application of [§ 1226] shall not be subject to review."  8 U.S.C. § 1226(e).  Section 1226(e) specifically directs that "[n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole."  *Id.* This provision blocks judicial review of ICE's discretionary decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.

As the Supreme Court explained in *Demore*, 538 U.S. at 516-17, this provision applies to strip jurisdiction of judicial review to ICE's discretionary judgments and decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.  *See also Jennings v. Rodriguez*, 583 U.S. 281,

295-96 (2018) (Section "1226(e) precludes an alien from challenging a discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding his detention or release.") (cleaned up). The Supreme Court in *Jennings* explained that Section 1226(e) would not bar jurisdiction of a challenge to "the extent of the Government's detention authority under the statutory framework as a whole." *Id.* Jurisdiction would also not be stripped if the challenge was to "the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* at 296. But, if the challenge is simply to ICE's discretionary decision to arrest and detain an alien, as Petitioner has set forth here, then Section 1226(e) squarely applies to strip a court of jurisdiction to review such action. *See Nielsen*, 586 U.S. at 401 (Explaining that Section 1226(e) "applies only to 'discretionary' decisions about the 'application of § 1226 to particular cases."); *Hamada v. Gillen*, 616 F. Supp. 2d 177, 181 (D. Mass. 2009) (Concluding that district court lacks jurisdiction under Section 1226(e) to review decision to detain and deny bond to alien and also finding claim that detention violates due process rights without merit "because detention during removal proceedings is a constitutionally permissible part of that process.").

Under the system established by Congress, Petitioner must request release from ICE custody to an Immigration Judge, and if dissatisfied with the outcome of such request, to the Board of Immigration Appeals. The district courts, however, have no role in making such a determination under the facts as presented. As the First Circuit has explained in a case involving ICE's discretionary decisions regarding where and when to make arrests pursuant to 8 U.S.C. § 1226(a), "[i]t is not for [courts] to say whether ICE's strategy is sound public policy, or conversely, whether that strategy is antithetic to sound public policy. That question lies within the domain of the politically accountable branches of the federal and state governments. Our

17

task is simply to decide the pertinent legal issues ….". *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 18–19 (1st Cir. 2020). Here, Petitioner's detention is lawful and he has not raised any "pertinent legal issues" that this Court has jurisdiction to review. As such, this Petition must be denied.

**CONCLUSION**

For the above reasons, Petitioner's detention is lawful pursuant to statute, regulation, and the Constitution. Additionally, Petitioner has failed to exhaust his administrative remedies prior to filing this Petition. Finally, the Court lacks jurisdiction over ICE's discretionary decisions to arrest, detain, and initiate removal proceedings against Petitioner. As such, this Court must deny his request for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 16, 2025                By:    */s/ Shawna Yen*
                                            Shawna Yen
                                            Assistant U.S. Attorney
                                            U.S. Attorney's Office
                                            John J. Moakley U.S. Courthouse
                                            1 Courthouse Way, Suite 9200
                                            Boston, MA  02210
                                            Tel.: 617-748-3100
                                            Email: Shawna.Yen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 16, 2025               By:    */s/ Shawna Yen*
                                            SHAWNA YEN
                                            Assistant United States Attorney